```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


WM. C. PLOUFFE, JR.          :    CIVIL ACTION
                             :
       v.                    :
                             :
F. JAVIER CEVALLOS, et al.   :    NO. 10-1502
```

MEMORANDUM

McLaughlin, J.                                    June 1, 2012

This action arises from the plaintiff's termination from employment at Kutztown University of Pennsylvania (the "University" or "Kutztown"), a state university. The plaintiff, William C. Plouffe, Jr. ("Plouffe"), brings claims under 42 U.S.C. § 1983 and various state laws against several Kutztown professors and employees for alleged constitutional and state law violations. He also alleges violations of his Weingarten right to union representation.

Defendants Robert Watrous, John Cavanaugh, and Michael Mottola now move to dismiss the plaintiff's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant the motion with prejudice as to defendant Watrous, and deny the motion as to defendants Cavanaugh and Mottola.

1

I.  Background[1]

Plouffe is a former criminology professor at Kutztown University. On or about January 5, 2008, Plouffe was hired by the University as a professor in the criminal justice department (the "Department") with a one year renewable contract. 3d Am. Compl. ("TAC") ¶ 26.

Over the course of his two years of employment at the University, Plouffe experienced multiple conflicts with other members of the Department and the University, particularly the Department chair, defendant Alexander Pisciotta, and another professor, defendant Keith Logan. These conflicts erupted over a variety of topics, including publication authorship, teaching course load and course assignments, a proposed Master's degree program, examination writing, a speaker series, and a Westlaw subscription. See TAC ¶¶ 27-42.

Plouffe's conflict with the University came to a head with his involvement on a faculty search committee during the Spring of 2009. Plouffe objected to the consideration of an unqualified candidate with personal connections to University employees. The candidate had lied on his application and represented that he received honors that he had not. TAC ¶¶ 44-

---

[1] The Court accepts all well-pleaded facts in the amended complaint as true and draws all reasonable inferences in favor of the non-moving party, while disregarding any legal conclusions. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

47.   The other members of the committee still wanted to hire the candidate, but Plouffe filed a complaint with the University Dean, Provost, and Office of Social Equity, which sustained his petition and informed the Department that the candidate would not be considered for hire.  TAC ¶¶ 48-50.  This report is the alleged basis for retaliation against Plouffe, which ultimately led to the termination of his employment with the University.

During June or July of 2009, the Department lodged a complaint with the University administration against Plouffe. TAC ¶ 57.  On or about July 27, 2009, Plouffe met with the Dean about the complaint.  The University provided insufficient notice as to the topic of the meeting and thus Plouffe did not have a union representative with him.  TAC ¶ 61.  Meanwhile, Plouffe was notified that an investigation was being conducted, although he was not given any specifics about the charges against him.  His conflicts with Department members continued throughout this time. TAC ¶¶ 64-65, 66-67.

On September 3, 2009, Plouffe was ordered to attend an investigatory interview.  He attended with union representatives but was not informed of the details of the charges against him. On September 16, 2009, Plouffe was notified that he was scheduled for a pre-disciplinary conference on September 18, 2009.  Plouffe believes that the scheduling of the conference provided insufficient time to prepare a defense and evidences bad faith.

The hearing was rescheduled for October 6, 2009 and the University refused to provide discovery sought by Plouffe.  TAC ¶¶ 69-72.

At the October 6, 2009 hearing, Plouffe answered the questions asked of him, but was denied the opportunity to respond to the other charges against him.  A person apparently from the office of the Chancellor of the Pennsylvania State System of Higher Education ("PASSHE") was present during the hearing and responded to Plouffe's legal arguments.  Although he received permission to submit more documents following the hearing, Plouffe did not have the opportunity to do so before a decision was made.  TAC ¶¶ 73, 74.

On the Friday following the hearing, Plouffe received a formal letter from the University notifying him of his immediate dismissal.  The stated reasons were (1) failing to develop constructive relationships with the Department and (2) contributing to significant conflicts inhibiting the ability of the Department from properly functioning.  TAC ¶ 75.

After his termination, a number of Plouffe's former students engaged in activities to bring him back as a professor. Several defendants, including defendant Watrous, the Dean of Students at Kutztown, pressured the students to stop these activities.  Defendant Pisciotta and others tore down posters that students had posted opposing Plouffe's termination.  TAC ¶

4

88.

      Defendant Cavanaugh is the Chancellor of the Pennsylvania State System of Higher Education ("PASSHE"). Plouffe was told by the president of the faculty union, Paul Quinn, that he had personally brought Plouffe's case to the Chancellor's attention. Newly added defendant Mottola is the Labor Officer at PASSHE. Plouffe was told by Paul Quinn that Mottola had personally handled Plouffe's post-termination grievances, which were denied at all three stages. TAC ¶¶ 92-93.

## II. Procedural History

      Plouffe initially filed suit in April 2010 against Kutztown University, twelve named professors and university employees, and additional John Does. Plouffe sued the individual defendants in their official and individual capacities. The original complaint alleged 19 causes of action. Plouffe amended his complaint as of right in July 2010. That amended complaint alleged 22 causes of action.

      On April 12, 2011, this Court granted Kutztown University's motion to dismiss the first amended complaint in full on the basis of sovereign immunity. The Court also dismissed all claims against the individual defendants in their official capacities on the same basis. ECF No. 57.

      As to the individual capacity claims, the Court

dismissed all but the following five claims: First Amendment free speech, First Amendment right to petition, two counts relating to the Pennsylvania Whistleblower law, and a § 1983 conspiracy claim. ECF No. 57.

With leave of court, Plouffe filed a Second Amended Complaint on July 11, 2011. That complaint added three new defendants, Watrous, Cavanaugh, and Mottola. The other twelve original individual defendants answered the Second Amended Complaint. ECF Nos. 130-141. Meanwhile, the three newly added defendants moved to dismiss. In response, Plouffe filed a Third Amended Complaint without leave of court.[2]

The Third Amended Complaint names 15 individual defendants and additional John Does, and brings counts for violations of: (1) the First Amendment rights to free speech and to petition; (2) procedural due process under the Fourteenth Amendment;[3] (3) Pennsylvania Whistleblower laws; (4) various Pennsylvania administrative agency laws; and (5) Weingarten rights to union representation. Plouffe also alleges conspiracy under 42 U.S.C. § 1983.

---

[2] The defendants did not challenge the propriety of the filing. The Court therefore agreed to consider the Third Amended Complaint as the operative complaint during a telephone conference with the parties on April 16, 2012.

[3] The Court previously dismissed Plouffe's procedural due process claim because he did not have a property interest in his job. ECF No. 57. Plouffe has re-pleaded the claim as violating his liberty interest.

The three newly added defendants, Watrous, Cavanaugh, and Mottola, move to dismiss the Third Amended Complaint as against them for failure to allege their personal involvement in the wrongdoing.

III. Analysis

A. Defendant Watrous, Dean of Students

The Third Amended Complaint alleges that defendant Watrous, the Dean of Students at Kutztown, pressured Kutztown students to stop engaging in activities to bring back Plouffe as a professor. Watrous is named as a defendant only in the conspiracy count, Count Seven. TAC ¶¶ 88, 114-15.

Plouffe has failed to state a claim against Watrous for civil conspiracy because he fails to plead any facts that plausibly suggest a meeting of the minds or agreement among Watrous and the other defendants, as required to plead civil conspiracy. See Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 184-85 (3d Cir. 2009); Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008); Ammlung v. City of Chester, 494 F.3d 811, 814 (3d Cir. 1974).

Plouffe's proposed Fourth Amended Complaint likewise lacks sufficient factual allegations to create plausible grounds to infer an agreement between Watrous and the other defendants. His proposed complaint alleges that Watrous "pressured the

students to stop these activities by warning them about assisting Plouffe in his attempts to remedy his termination" and "interfered with Plouffe's attempts to obtain witnesses and evidence." Proposed Fourth Am. Compl. ¶ 88. Plouffe makes a conclusory allegation that Watrous "did so in agreement and in conjunction with the other Defendants to retaliate against Plouffe," but provides no factual allegations to render this statement plausible. The Court therefore grants the motion to dismiss as to defendant Watrous and denies leave to amend as futile.

    B.    Defendants Cavanaugh & Mottola, Chancellor and Labor Officer of PASSHE

The Court understands the plaintiff to be making two types of allegations against defendants Cavanaugh and Mottola, both of which are essentially supervisory liability claims. First, the plaintiff alleges that since the defendants work at PASSHE, the supervising agency of Kutztown University, and they denied Plouffe's grievances on the termination decision, they were and are "ultimately responsible for the acts and omissions relative to the violation of Plouffe's civil and constitutional rights." TAC ¶¶ 22, 23. Second, he alleges that these defendants are liable because there were no policies governing the civil rights violations that Plouffe allegedly suffered. Id. ¶¶ 91, 92.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). See also Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). The Court of Appeals for the Third Circuit has explained that there are several potential theories of supervisory liability, although the terminology used to describe such theories is not always consistent. See Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 71 (3d Cir. 2011); Santiago v. Warminster Tp., 629 F.2d 121, 129 n.5 (3d Cir. 2010).

First, supervisors may be liable if, with deliberate indifference to the consequences, they "established and maintained a policy, practice or custom which directly caused the constitutional harm." Santiago, 629 F.2d at 129 n.5; A.M., 372 F.3d at 586.

Second, supervisory liability may attach if the supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." Id. (citing A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Detention Ctr., 372 F.3d 572, 596 (3d Cir. 2004)).[4] To impose

---

[4] Plouffe asserts incorrectly that Bell Atlantic Corp. v. Twombly has eliminated the requirement that he plead actual knowledge and acquiescence. Twombly held that factual

9

liability, there must be both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate. <u>Colburn v. Upper Darby Twp.</u>, 838 F.2d 663, 673 (3d Cir. 1988), <u>impliedly overruled on other grounds by</u> <u>Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163 (1993).

---

allegations must be sufficient to raise a right to relief above a speculative level. 550 U.S. 544, 555 (2007). It did not purport to relax the substantive requirements of supervisory liability under § 1983.

If anything, the Supreme Court's later decision in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), may bring into question the ongoing viability of knowledge and acquiescence as a basis for supervisory liability at all. In <u>Iqbal</u>, the Supreme Court held that a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution. 129 S. Ct. at 1948.

<u>Iqbal</u>'s implications for supervisory liability are not yet clear. In a few post-<u>Iqbal</u> cases, the Third Circuit has questioned but not answered whether <u>Iqbal</u> narrowed the scope of supervisory liability. <u>See, e.g.</u>, <u>Arqueta v. U.S. Immigration & Customs Enforcement</u>, 643 F.3d 60, 70 (3d Cir. 2011); <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 n.8 (3d Cir. 2010). Indeed, in one case, the Third Circuit commented that "[i]n light of . . . [<u>Iqbal</u>], it is uncertain whether proof of [personal knowledge regarding a constitutional violation], with nothing more, would provide a sufficient basis for holding [defendant] liable . . . under § 1983. . . ." <u>Bayer v. Monroe Cty. Children & Youth Servs.</u>, 577 F.3d 186, 190 n.5 (3d Cir. 2009). However, the Third Circuit has not resolved the questions of <u>Iqbal</u>'s impact on all of the pre-<u>Iqbal</u> theories of supervisory liability. <u>Id</u>.

Because the Third Circuit has not held that a plaintiff may no longer establish § 1983 liability based on a supervisor's knowledge of and acquiescence in a subordinate's constitutional violation, this Court will continue to apply the pre-<u>Iqbal</u> supervisory liability analysis.

Interpreted liberally, Plouffe's third amended complaint attempts to assert both theories of supervisory liability against defendants Cavanaugh and Mottola.

The Court finds that Plouffe has not stated a claim for liability under the first theory - that defendants Cavanaugh and Mottola failed to establish a policy.  In <u>Sample v. Diecks</u>, the Third Circuit concluded that plaintiffs must specifically identify what the supervisors failed to do that evinces deliberate indifference to the plaintiff's constitutional rights. 885 F.2d 1099, 1118 (3d Cir. 1989).  Thus, in <u>Sample</u>, the Third Circuit found no supervisory liability absent an identification of a <u>specific</u> practice or procedure that the supervisor failed to employ and specific findings by the district court that, among other things, (1) the existing custom or practice without that specific procedure created an unreasonable risk of constitutional violation, and (2) the supervisor was aware of and indifferent to the risk.  <u>Id</u>.  Alternatively, a plaintiff may show deliberate indifference with evidence that such constitutional harm has occurred on numerous occasions without an appropriate response despite supervisory awareness of a pattern of such injuries.  <u>Id</u>. Because Plouffe has plead neither of the above in this case, he has failed to plead supervisory liability under this first theory.

As to his second theory of supervisory liability,

Plouffe has not alleged direct involvement or directed action by defendants Cavanaugh or Mottola, which means his claim must be based on a knowledge and acquiescence theory of liability. The Court finds that the complaint is sufficient to survive Cavanaugh and Mottola's motion to dismiss.

The defendants argue that the only allegations regarding Cavanaugh and Mottola's knowledge come after the fact, when Plouffe filed a post-termination grievance. Citing <u>Rode v. Dellarciprete</u>, the defendants argue that this is insufficient to establish personal involvement on the part of the supervisory officials. In <u>Rode</u>, the plaintiff alleged that the Governor had personal knowledge of the unconstitutional conduct against her because the plaintiff had filed grievances with the Governor's administrative office. The Third Circuit held that such allegations were insufficient to show actual knowledge and, hence, personal involvement. 845 F.2d 1195, 1208 (3d Cir. 1988).

However, <u>Rode</u> is distinguishable from the case at bar. In <u>Rode</u>, the grievances filed with the governor's administrative office were the only evidence of actual knowledge on the part of the supervisory official; there was no allegation that the governor had personally reviewed the grievance or otherwise had knowledge of the alleged violation. By contrast, here, Plouffe alleges that defendant Mottola handled Plouffe's particular grievance. TAC ¶ 92. Furthermore, Plouffe claims that a

12

representative from the Chancellor's Office was present at Plouffe's pre-termination final hearing, and that this representative responded to Plouffe's legal arguments.  TAC ¶ 71.  Regarding defendant Cavanaugh, Plouffe also alleged that the president of the local faculty union "personally brought the matter to the attention of the Chancellor, who said he would look into it when the grievance reached his level."  TAC ¶ 91.

These allegations, which the Court must accept as true, reasonably support a theory of contemporaneous knowledge and acquiescence by defendants Cavanaugh and Mottola.  Atkinson v. Taylor is instructive.  In that case, the Third Circuit distinguished Rode because the plaintiff had alleged that he wrote to or spoke with the supervisory officials directly regarding his alleged unconstitutional treatment, and because the supervisory officials in Atkinson had much "narrower responsibilities as links in a chain of command within a single prison," as compared to the governor's oversight of the state executive branch in Rode.  316 F.3d 257, 270-71 (3d Cir. 2003).  Thus, the Atkinson court stated that it could not hold as a matter of law that the supervisory officials did not have actual knowledge of the unconstitutional conduct.  Id.  See also Carter v. Smith, No. 08-279, 2009 WL 3088428, at *5 (E.D. Pa. Sept. 22, 2009) (denying motion to dismiss supervisory defendants where plaintiff alleged that they personally reviewed his grievances

and failed to conduct an adequate investigation into ongoing violation of his right to medical care).

Similarly, in this case, the Court cannot find as a matter of law that Plouffe's allegations of Chancellor office involvement in the pre-termination final hearing, pre-termination personal knowledge of Plouffe's case on the part of defendant Cavanaugh by way of the faculty union official, and personal review and denial of his grievance by defendants Cavanaugh and Mottola are insufficient to state a claim for supervisory liability.  The Court therefore denies the motion to dismiss as to these two defendants.

An appropriate order follows.